**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
─────────────────────────────────

**REPARATA MAZZOLA, on Behalf of Herself**
**and All Others Similarly Situated, and**          **OPINION AND ORDER**
**the General Public and Acting in the**
**Public Interest,**
                              **Plaintiff,**

   **- against -**                                  **10 Civ. 8996 (JGK)**

**ROOMSTER CORP., JOHN S. SHRIBER, ROMAN**
**ZAKS, and DOES 1-10,**
                              **Defendants.**
─────────────────────────────────

**JOHN G. KOELTL, District Judge:**

The plaintiff, Reparata Mazzola (the "plaintiff"), brings
this putative class action against Roomster Corporation
("Roomster"), and its founders and principal owners, John S.
Shriber and Roman Zaks (collectively, the "defendants").  The
plaintiff asserts claims for breach of contract, fraud,
negligent misrepresentation, conversion, and violation of the
California Consumer Legal Remedies Act, Cal. Civ. Code § 1770 <u>et</u>
<u>seq.</u>, and Cal. Bus. & Prof. Code §§ 17200 <u>et seq.</u> and 17500 <u>et</u>
<u>seq.</u>  The defendants now move to dismiss the Second Amended
Class Action Complaint pursuant to Federal Rule of Civil
Procedure 12(b)(6).  In the alternative, the defendants move to
strike the class allegations in the Complaint pursuant to
Federal Rules of Civil Procedure 12(f) and 23(d)(1)(D).

1

**I.**

On a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in favor of the plaintiff. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).  The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient."  Velez v. Levy, 401 F.3d 75, 80 (2d Cir. 2005) (internal quotation marks and citation omitted).  The Court should not dismiss the Complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). While detailed factual allegations are not required, the pleading must include more than an "unadorned, the-defendant-unlawfully-harmed-me accusation," "'labels and conclusions,'" "'a formulaic recitation of the elements of a cause of action,'"

2

or "'naked assertion[s].'"  Id. (alteration in original)
(quoting Twombly, 550 U.S. at 555, 557).  Accordingly, the basic
principle that a court must accept all allegations as true is
inapplicable to either legal conclusions or "mere conclusory
statements."  Id.  A court can thus begin its analysis of the
sufficiency of pleadings "by identifying pleadings that, because
they are no more than conclusions, are not entitled to the
assumption of truth."  Id. at 1950.  "When there are well-
pleaded factual allegations, a court should assume their
veracity and then determine whether they plausibly give rise to
an entitlement to relief."  Id.

A claim that sounds in fraud must meet the heightened
pleading standard of Federal Rule of Civil Procedure 9(b).  See
Litwin v. Blackstone Grp., L.P., 634 F.3d 706, 715 (2d Cir.
2011); Campbell v. Mark Hotel Sponsor, LLC, No. 09 Civ. 9644,
2010 WL 3466020, at *4 (S.D.N.Y. Sept. 3, 2010).  Rule 9(b)
requires that the complaint "(1) specify the statements that the
plaintiff contends were fraudulent, (2) identify the speaker,
(3) state where and when the statements were made, and (4)
explain why the statements were fraudulent."  ATSI Commc'ns,
Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007).

When presented with a motion to dismiss pursuant to Rule
12(b)(6), the Court may consider documents that are referenced

3

in the complaint, documents that the plaintiff relied on in
bringing suit and that are either in the plaintiff's possession
or that the plaintiff knew of when bringing suit, or matters of
which judicial notice may be taken.  See Chambers v. Time
Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); SEC v. Rorech,
673 F.Supp.2d 217, 221 (S.D.N.Y. 2009).


                                **II.**

     The following assertions of fact are assumed to be true on
this motion to dismiss.

     Roomster Corporation owns and operates Roomster.com, an
online roommate matching service whose principals are John S.
Shriber and Roman Zaks.  (Second Am. Class Action Compl.
("Second Am. Compl."), at ¶¶ 5-8.)  Roomster.com allows members
to connect to each other to find roommates or rent apartments in
a safe online environment.  (Second Am. Compl. ¶ 14.)

     To use the features of Roomster.com, users must become
members by providing personal information and confirming that
they have read and agreed to Roomster's Privacy Policy and Terms
of Use.  (Decl. of John S. Shriber in Supp. of Defs.' Mot.
Dismiss ("Shriber Decl."), at ¶¶ 9-11.)  Users confirm their
acceptance by checking a box next to the statement, "I affirm
that I have read and agree to the Privacy Policy and Terms of

                                  4

[U]se."  (Shriber Decl. Ex. C.)  Embedded in the statement is a
hyperlink to Roomster's Terms of Use.  (Shriber Decl. ¶ 10.)
The Terms of Use describe Roomster's policies with respect to
subscription fees and automatic renewals, as well as the
procedure for closing an account or canceling a subscription.
(Shriber Decl. Ex. A ¶ 3.)

        Once a user becomes a member, the user chooses between a
Basic Membership and a Full Membership.  (Second Am. Compl. ¶
15.)  The Basic Membership is free and allows a member to
search, post, and contact other members of the website.
(Shriber Decl. ¶ 6.)  The Full Membership provides the same
functions as the Basic Membership, as well as access to a secure
private email account on the website.  (Shriber Decl. ¶ 6.)  The
cost of a Full Membership depends on the length of the
subscription and varies from $5.95 for three days to $29.95 for
four weeks.  (Second Am. Compl. ¶ 16.)  Roomster has an
automatic renewal policy, set out in its Terms of Use, under
which Full Memberships are automatically renewed for thirty days
at a cost of $29.95 and continue to be renewed until the member
cancels the member's subscription.  (Shriber Decl. ¶ 16.)  If a
member chooses a Full Membership, the member is directed to
confirm again that the member has read and agreed to Roomster's

5

Privacy Policy and Terms of Use before Roomster will charge the provided credit card.  (Shriber Decl. ¶ 14.)

On September 28, 2009, the plaintiff became a member of Roomster.com.  (Shriber Decl. Ex. C.)  The plaintiff selected a Full Membership for three days, provided her credit card and billing information, and was charged $5.95.  (Second Am. Compl. ¶¶ 28-30.)  Before the plaintiff's credit card was charged, she checked the box confirming that she had read and agreed to the Terms of Use.  (Shriber Decl. Ex. C.)  In accordance with the Terms of Use, Roomster charged the plaintiff's credit card $5.95 for her initial three day membership.  Roomster subsequently charged the plaintiff's credit card $29.95 on October 2, November 2, and December 2, 2009.  (Second Am. Compl. ¶¶ 30-32.)

The plaintiff alleges that, in December 2009, she noticed the three $29.95 charges from Roomster on her credit card bill. (Second Am. Compl. ¶ 33.)  She alleges that she asked the credit card company to discontinue the charges and also tried to cancel her Roomster membership by following instructions posted on Roomster.com.  (Second Am. Compl. ¶ 33.)  She alleges that she was unable to cancel her membership by following the instructions on Roomster.com, which directed her to click on the "close account" button under the "my account" tab on her logged in homepage.  (Second Am. Compl. ¶¶ 17, 33.)  The Terms of Use

agreement contains a different set of instructions, which requires users to "click the 'Settings' button located under the 'Account' tab" on the logged in homepage and then to "click on the 'Subscription' link and choose 'Cancel my subscription.'" (Shriber Decl. ¶ 21.)  The defendants claim that the plaintiff succeeded in having the charges on her credit card reversed. (Shriber Decl. ¶ 24; see also Shriber Decl. Ex. F.)  The plaintiff alleges that the defendants did not cancel her membership, as she attempted to have done by using the website. Rather, the plaintiff alleges, the only way she was able to have her membership canceled was "to cancel her credit/debit card to avoid further charges."  (Second Am. Compl. ¶ 33.)

The plaintiff brought this action asserting claims for breach of contract, fraud, negligent misrepresentation, conversion, and violation of the California Consumer Legal Remedies Act, Cal. Civ. Code § 1770 et seq., and Cal. Bus. & Prof. Code §§ 17200 et seq. and 17500 et seq.  The plaintiff's claims are based on her allegation that the defendants failed to disclose adequately the automatic renewal billing procedure and prevented her from canceling her Roomster membership.

### III.

This action was brought in the Central District of California and transferred to this Court pursuant to 28 U.S.C. § 1404(a).[1]

### A.

The defendants move to dismiss the plaintiff's First, Second, Third, Fifth, and Sixth Claims for Relief, namely the plaintiff's breach of contract, fraud, and negligent misrepresentation claims, and her claims under the California

---

[1] Because this diversity action was transferred to this District pursuant to 28 U.S.C. § 1404(a), the substantive law to be applied to this case, including choice of law rules, is California law.  See Van Dusen v. Barrack, 376 U.S. 612, 639 (1964) ("[W]here the defendants seek transfer, the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue. A change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms.").  Moreover, where there is no difference between California and New York law, this Court need not engage in any choice of law analysis.  See Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co., 363 F.3d 137, 143 (2d Cir. 2004) ("Choice of law does not matter . . . unless the laws of the competing jurisdictions are actually in conflict.").  Similarly, where the parties agree on the law to be applied, this Court can accept that agreement.  See Am. Fuel Corp. v. Utah Energy Dev. Co., Inc., 122 F.3d 130, 134 (2d Cir. 1997) ("[W]here the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry.").

The defendants are residents of New York and the plaintiff is a resident of California.  The parties have not briefed the relevant choice of law rules in California.  Where the parties have argued that there is any difference between New York and California law, the Court will note it below.

Consumer Legal Remedies Act, Cal. Civ. Code § 1770 et seq., and Cal. Bus. & Prof. Code §§ 17200 et seq. and 17500 et seq.  The defendants claim that the plaintiff has failed to allege any false representation or damages with respect to any of these claims.

## 1.

The defendants move to dismiss the plaintiff's breach of contract claim alleged in the First Claim for Relief.  To plead a breach of contract under New York law, the plaintiff must allege four elements: "(1) the existence of a contract; (2) performance by the party seeking recovery; (3) nonperformance by the other party; and (4) damages attributable to the breach." IMG Fragrance Brands, LLC v. Houbigant, Inc., 679 F. Supp. 2d 395, 402 (S.D.N.Y. 2009) (internal quotation marks and citation omitted).[2]  The defendants contend that the plaintiff failed to establish the third and fourth elements of breach of contract.

The plaintiff has not established the third element of a breach of contract claim with respect to the automatic renewal billing procedure because she does not allege that the terms of the contract were breached.  The nonperformance element of a

---

[2] California law is similar.  See, e.g., Boland, Inc. v. Rolf C. Hagen (USA) Corp., 685 F. Supp. 2d 1094, 1101 (E.D. Cal. 2010).

breach of contract claim requires that "the complainant must plead the terms of the agreement upon which defendant's liability rests." <u>Kaplan v. Aspen Knolls Corp.</u>, 290 F. Supp. 2d 335, 337 (E.D.N.Y. 2003) (internal quotation marks and citation omitted).  Here the plaintiff alleges that the defendants failed to disclose clearly the automatic renewal billing procedure, but this allegation does not state a claim for breach of contract. The plaintiff does not and cannot allege that the defendants failed to comply with any of the billing terms disclosed in the Terms of Use.  Indeed, it appears that Roomster's Terms of Use contain an accurate description of the automatic renewal procedure under Section 3, which is entitled "SUBSCRIPTION FEES AND AUTOMATIC RENEWALS."  (Shriber Decl. Ex. A ¶ 3.)[3]  The plaintiff does not allege that, by continuing to bill the plaintiff $29.95 each month until the plaintiff either canceled her subscription or her credit card, Roomster was doing anything other than complying with the automatic renewal term of its Terms of Use.  (Second Am. Compl. ¶¶ 29-32.)  Thus, the plaintiff fails to state a claim for breach of contract with respect to the billing procedure because she does not allege

---

[3] The plaintiff also acknowledges that the defendants disclosed the terms when she states that the terms appear in a five page document (the Terms of Use) in 10 point font.  (Second Am. Compl. ¶ 19.)

that Roomster failed to comply with any of the terms disclosed in the contract.

The plaintiff does allege, however, that the defendants prevented her from canceling her Roomster membership once she became aware that she had been billed multiple times. (Second Am. Compl. ¶¶ 23, 33.) The plaintiff alleges that she followed the instructions on how to cancel her membership, but that the defendants prevented her from doing so. (Second Am. Compl. ¶¶ 23, 33, 59.) While the defendants dispute these allegations, that dispute raises issues of fact that cannot be decided on a motion to dismiss. With respect to the cancelation issue, the plaintiff has stated a claim with respect to the third element of her breach of contract claim because the plaintiff has sufficiently alleged that the defendants breached their agreement, and prevented the plaintiff from canceling her membership and avoiding subsequent charges.

As with all claims, the defendants allege that the plaintiff suffered no damages from the alleged breach of contract because she paid for the additional membership fees with a credit card and the credit card charges were reversed. (Shriber Decl. ¶ 24.) The plaintiff is inconsistent in the Second Amended Complaint about whether she provided the defendants with a credit card or a debit card when she entered

11

her billing information during the Roomster subscription signup process.  (Second Am. Compl. ¶¶ 28-30, 33.)  In opposing the motion to dismiss, the plaintiff argued that she "was charged the fees to her debit card," and so the fees were paid when the defendants debited her account and she lost the use of her money for some time.  At this time, it is unclear whether the plaintiff provided a debit or credit card and, if a credit card, whether she paid the credit card bill.  Further, it is unclear whether the plaintiff succeeded in having the charges reversed on either her debit or credit card, and what losses, if any, she suffered from the alleged failure of the defendants to cancel her membership when requested.  This dispute raises issues of fact that cannot be resolved on this motion to dismiss.


## 2.

The defendants next move to dismiss the plaintiff's fraud claim, her Second Claim for Relief.  To plead a claim for common law fraud under New York law, the plaintiff must allege four elements: "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance."  Banque Arabe et Internationale

12

D'Investissement v. Md. Nat. Bank, 57 F.3d 146, 153 (2d Cir. 1995); GEM Advisors, Inc. v. Corporacion Sidenor, S.A., 667 F. Supp. 2d 308, 332 (S.D.N.Y. 2009).[4]

The plaintiff's allegations that the automatic renewal billing procedure was not adequately disclosed fail to state a claim for fraud because there is no allegation of a false representation.  See Bezuszka v. L.A. Models, Inc., No. 04 Civ. 7703, 2006 WL 770526, at *13 (S.D.N.Y. Mar. 24, 2006) (dismissing a fraud claim in part based on the plaintiffs' failure to plead with particularity the alleged false representations).  Although a false representation could occur through an omission, this is not a case in which the defendants failed to disclose material information that they had a duty to disclose.  See GEM Advisors, 667 F. Supp. 2d at 332 ("[I]nstead of an affirmative misrepresentation, a fraud cause of action may be predicated on acts of concealment where the defendant had a duty to disclose material information." (quoting Kaufman v. Cohen, 760 N.Y.S.2d 157, 165 (App. Div. 2003)).  Instead, the defendants accurately disclosed the automatic renewal billing procedure in the Terms of Use, which the plaintiff twice stated that she accepted before being billed.  (Shriber Decl. ¶¶ 11,

---

[4] Under California law, the elements of fraud are similar. Marolda v. Symantec Corp., 672 F. Supp. 2d 992, 997 (N.D. Cal. 2009).

13

14.)  Thus the plaintiff has failed to state a claim for fraud
with respect to the billing procedure because she has not
alleged that the defendants made a material misrepresentation.

As with the breach of contract claim, however, the
plaintiff does allege that the defendants prevented her from
canceling according to the instructions that they provided.
(Second Am. Compl. ¶¶ 23, 33, 67.)  The plaintiff has
sufficiently alleged that the defendants presented a knowingly
false procedure for cancelation and then failed to comply with
that represented means of cancelation.  With respect to the
cancelation issue, the plaintiff has stated a claim for fraud.

**3.**

The defendants move to dismiss the plaintiff's negligent
misrepresentation claim, her Third Claim for Relief.  To plead a
claim for negligent misrepresentation under New York law, the
plaintiff must allege five elements: "(1) the defendant had a
duty, as a result of a special relationship, to give correct
information; (2) the defendant made a false representation that
he or she should have known was incorrect; (3) the information
supplied in the representation was known by the defendant to be
desired by the plaintiff for a serious purpose; (4) the
plaintiff intended to rely and act upon it; and (5) the

14

plaintiff reasonably relied on it to his or her detriment."
Hydro Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 20
(2d Cir. 2000); Amusement Indus., Inc. v. Stern, 786 F. Supp. 2d
758, 778 (S.D.N.Y. 2011).[5]

As with a claim for fraud, negligent misrepresentation
requires a false representation.  However, as discussed above
with respect to the plaintiff's fraud claim, the plaintiff has
failed to allege any false misrepresentation on the part of the
defendants with respect to the automatic billing procedure.
However, with respect to whether the defendants prevented the
plaintiff from canceling her Roomster membership, the plaintiff
has stated a claim for negligent misrepresentation.  (Second Am.
Compl. ¶¶ 23, 33, 73.)

The defendants also move to dismiss the negligent
misrepresentation claim in its entirety because the plaintiff
has failed to allege the existence of a special relationship as
required by New York law.  The defendants concede that there is
an actual conflict between New York and California law because
California does not require a special relationship.  (Defs.'
Memo. in Supp. of Mot. to Dismiss Second Am. Compl. at 17 n.8.)

---

[5] California law on negligent misrepresentation is similar, but
lacks a requirement that the defendant has a duty resulting from
a special relationship.  See Glenn K. Jackson Inc. v. Roe, 273
F.3d 1192, 1200 n.2 (9th Cir. 2001).

However, the defendants urge the Court to apply New York choice of law rules and to apply New York law.  See <u>Amusement Indus., Inc. v. Stern</u>, 693 F. Supp. 2d 327, 339-41 (S.D.N.Y. 2010) (applying New York choice of law rules to hold that New York negligent misrepresentation law applies because most of the conduct occurred in New York); <u>but see</u> <u>Intellivision v. Microsoft Corp.</u>, No. 07 Civ. 4079, 2008 WL 3884382, at *5-6 (S.D.N.Y. Aug. 20, 2008) (applying New York choice of law rules to hold that Connecticut negligent misrepresentation law applies because the loss was incurred in Connecticut).  However, because this diversity action was transferred to this Court from California, California choice of law rules must be applied.  See <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 639 (1964).  Because the parties have not briefed California choice of law rules with respect to this claim, the defendants have not shown that a special relationship is required for this cause of action.  Therefore, the defendants have not shown at this time that the claim of negligent misrepresentation should be dismissed because of the alleged absence of such a relationship.

**4.**

The defendants next move to dismiss the plaintiff's Fifth Claim for Relief, namely her claim under the California Consumer

16

Legal Remedies Act (the "CLRA"), Cal. Civ. Code §§ 1770 et seq.

The CLRA prohibits "unfair methods of competition and unfair or

deceptive acts or practices" that are "intended to result or

which result[] in the sale or lease of goods or services to any

consumer . . . ." Cal. Civ. Code § 1770(a). In particular, the

relevant portions of the CLRA prohibit:

> Representing that goods or services have . . .
> characteristics . . . which they do not have . . . .
> Advertising goods or services with intent not to sell them
> as advertised. . . .
> Representing that a transaction confers or involves rights,
> remedies, or obligations which it does not have or involve
> . . . .
> Representing that the subject of a transaction has been
> supplied in accordance with a previous representation when
> it has not. . . . [and]
> Inserting an unconscionable provision in the contract.

Cal. Civ. Code §§ 1770(a)(5), (9), (14), (16), (19).

The defendants object to the plaintiff's allegations of

CLRA violations to the extent that the plaintiff seeks relief

under the CLRA beyond injunctive relief because there is a

notice requirement for a damages claim that the plaintiff

allegedly failed to satisfy. "Thirty days or more prior to the

commencement of an action for damages" under the CLRA, a

plaintiff must notify the defendant of the particular alleged

violations of § 1770(a) and demand that the defendant correct

the violations. Cal. Civ. Code § 1782(a). It is uncontested

that the plaintiff here did not comply with the notice

requirement, and therefore she may not seek damages under the

CLRA.  In addition to injunctive relief, the plaintiff also seeks punitive damages under the CLRA.  (Second Am. Compl. ¶ 86.)  However, punitive damages also are barred when the plaintiff does not comply with the notice requirement in § 1782(a).  See Util. Consumers' Action Network v. Sprint Solutions, Inc., No. 07 Civ. 2231, 2008 WL 1946859, at *9 (S.D. Cal. Apr. 25, 2008) (dismissing punitive damages claim because the plaintiff failed to comply with the CLRA's notice provision for damages actions).  Therefore the plaintiff's CLRA claims are dismissed to the extent that they seek any relief other than injunctive relief.

The plaintiff alleges that the defendants violated the CLRA "by uniformly and affirmatively representing that [the] consumer could purchase a 3-day membership for $5.95, a two-week membership for $14.95, and a four-week membership for $29.95, when that is not true."  (Second Am. Compl. ¶ 83.)  This allegation does not suffice to state a claim for relief under the CLRA because there is no adequate allegation that the defendants' representation was false.

Sections 1770(a)(5), (9, (14) and (16) require a plaintiff to allege either an affirmative misrepresentation or a material omission.  See Nelson v. Pearson Ford Co., 112 Cal. Rptr. 3d 607, 638 (Cal. Ct. App. 2011) ("[A]lthough a claim may be stated

under the CLRA in terms constituting fraudulent omissions, to be
actionable the omission must be contrary to a representation
actually made by the defendant, or an omission of a fact the
defendant was obliged to disclose." (internal quotation marks
omitted)); Pokrass v. DirecTV Grp., Inc., No. Civ. 07-423, 2008
WL 2897084, at *4 (C.D. Cal. July 14, 2008) (discussing how a
court may infer reliance from a material misrepresentation or
omission).  To state a claim for a CLRA violation, a plaintiff
must allege that "a reasonable consumer is likely to be deceived
. . . ."  Ford v. Hotwire, Inc., No. 07 Civ. 1312, 2008 WL
5874305, at *5 (S.D. Cal. Feb. 25, 2008).  A plaintiff can state
a claim based on misleading representations about billing
practices.  See Parino v. BidRack, Inc., No. 11 Civ. 3149, 2011
WL 4479462, at *1, *3 (N.D. Cal. Sept. 26, 2011) (holding that
the plaintiff sufficiently pleaded a CLRA violation when she was
not required to accept Terms of Use and the defendant's
affirmative misrepresentations led her to believe registration
was free, when in fact she was charged $99); Clerkin v.
MyLife.com, Inc., No. 11 Civ. 527, 2011 WL 3607496, at *6 (N.D.
Cal. Aug. 16, 2011) (holding that the plaintiffs adequately
alleged a CLRA violation when their credit cards were billed for
a subscription different from the one for which they signed up).
By contrast, when a website's Terms of Use, to which a

19

subscriber or purchaser must agree, disclose billing practices, those practices are adequately disclosed when a reasonable consumer would not likely be deceived. See Hotwire, 2008 WL 5874305, at *2-5 (holding that a reasonable consumer would not be deceived when customers must indicate that they "have read, understood, and accept" a website's Terms of Use that discloses that additional fees will apply).

The plaintiff has failed to allege adequately a claim under sections 1770(a)(5), (9), (14) or (16).  The plaintiff has not alleged that the defendants made a misrepresentation or an omission contrary to an affirmative representation because the plaintiff has conceded that the defendants disclosed the automatic renewal billing procedure.  As in Hotwire, there was no misrepresentation or omission because the defendants accurately represented the billing practices in a Terms of Use agreement that the plaintiff indicated she read and accepted.  A reasonable consumer would not be deceived about how Roomster intended to bill after having read and accepted the Terms of Use.  See Hotwire, 2008 WL 5874305, at *3-4.

Section 1770(a)(19) prohibits the inclusion of unconscionable provisions in contracts, and under California law a provision must be both procedurally and substantively unconscionable to be considered unconscionable.  Pokrass, 2008

20

WL 2897084, at *6; see also Armendariz v. Found. Health
Psychcare Servs., Inc., 6 P.3d 669, 690 (Cal. 2000) ("The
prevailing view is that procedural and substantive
unconscionability must both be present in order for a court to
exercise its discretion to refuse to enforce a contract or
clause under the doctrine of unconsionability." (internal
quotation marks and alterations omitted)).

Although the plaintiff cites § 1770(a)(19), the
unconscionability prohibition of the CLRA, in the Second Amended
Complaint, she does not identify any specific provisions of her
contract with Roomster that she alleges are unconscionable.  In
any event, the contract for a full membership in the Roomster
website is not unconscionable.  Under California law, contracts
that "concern[] a nonessential activity" cannot be procedurally
unconscionable because "the consumer always has the option of
simply forgoing the activity."  Pokrass, 2008 WL 2897084, at *6
(internal quotation marks and citation omitted).  A full
membership subscription to Roomster is a nonessential activity
because members may choose a free basic membership subscription
or choose not to use the website at all.  Cf. id. (explaining
that a cable television subscription is nonessential because the
same recreational service may be obtained free online or may be
forgone altogether).  Moreover, the existence of market

alternatives, such as a basic membership to Roomster or the use of other social websites, indicates that the full subscription to Roomster is hardly an essential activity.

It is possible that by incorporating other allegations from the Complaint into her claim for relief under the CLRA, (see Second. Am. Compl. ¶ 81), the plaintiff is incorporating the allegations about the allegedly deceptive description about the cancelation procedure into her CLRA claim.  For the reasons discussed above, the plaintiff's claims of violations of §§ 1770(a)(5), (9), (14), and (16) based on the allegedly deceptive cancelation procedure cannot be dismissed to the extent that they are alleged as a basis for injunctive relief.

### 5.

The defendants move to dismiss the plaintiff's Sixth Claim for Relief, namely her claims under the California Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq., and the California False Advertising Law (the "FAL"), Cal. Bus. & Prof. Code §§ 17500 et seq.  The UCL prohibits "unlawful, unfair [and] fraudulent business act[s] or practice[s]."  Id. § 17200.  The FAL prohibits the inclusion of "untrue or misleading" statements in advertising.  Id. § 17500.

22

To plead adequately an unlawful business practice under the UCL, the plaintiff must allege the violation of another California law.  See, e.g., Smith v. Ford Motor Co., No. 10-17321, 2011 WL 6322200, at *3 (9th Cir. Dec. 19, 2011) ("The unlawful conduct prong of the UCL is derivative of other California laws, including the CLRA . . . ."); Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1151 ("Unlawful acts are anything that can properly be called a business practice and that at the same time is forbidden by law . . . ." (internal quotation marks omitted)).  As discussed above, the plaintiff has failed to allege adequately a violation of the CLRA with respect to the automatic renewal billing procedure, but she has stated a violation of the CLRA, and thus also an unlawful business practice under the UCL, with respect to whether the defendants prevented her from canceling her membership.

California appellate courts disagree about how to define an unfair business practice in the context of a consumer action under the UCL.  See Rubio v. Capital One Bank, 613 F.3d 1195, 1204-05 (9th Cir. 2010) ("California appellate courts disagree on how to define an 'unfair' act or practice in the context of a UCL consumer action."); Lozano v. AT&T Wireless Servs., Inc., 504 F.3d 718, 735-36 (9th Cir. 2007).  Some courts use a balancing test, under which "a business practice is unfair 'if

it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits.'" Ferrington v. McAfee, Inc., No. 10 Civ. 1455, 2010 WL 3910169, at *13 (N.D. Cal. Oct. 5, 2010) (quoting McKell v. Wash. Mut., Inc., 49 Cal. Rptr. 3d 227, 240 (Cal. App. Ct. 2006)).  Other courts require the plaintiff to demonstrate that the business "practice violates public policy as declared by specific constitutional, statutory, or regulatory provisions," for it to be unfair. Rubio, 613 F.3d at 1205 (internal quotation marks omitted).

Under either test, the automatic billing procedure is not an unfair business practice.  With respect to the balancing test, the billing procedure causes no harm to consumers who read the disclosed terms of use, and any potential harm to consumers who do not read the terms is outweighed by the utility of the practice, which ensures that consumers with Full Memberships to Roomster do not have their full access to the website interrupted.  Cf. Ferrington, 2010 WL 3910169, at *13 (balancing test was satisfied when business practice was likely to deceive consumers, and the deception might be "unscrupulous").  Under the alternative test, the plaintiff has not identified any legislatively declared public policy that she claims the automatic billing procedure violates and, as discussed above, the billing procedure does not violate any law because it is not

deceptive.  See Van Slyke v. Capital One Bank, No. 07 Civ. 00671, 2007 WL 3343943, at *11 (N.D. Cal. Nov. 7, 2007).  Thus the plaintiff has failed to state an unfair business practice claim with regard to the billing procedure.

Under either test, the defendants' alleged refusal to allow the plaintiff to cancel her membership is an unfair business practice.  Under the balancing test, consumers may be harmed by the allegedly deceptive cancelation procedure, because the defendants' alleged refusal to permit cancelations would result in consumers continuing to be charged after they attempt to cancel or requiring consumers to cancel their credit card to avoid charges.  No benefit outweighs this alleged harm to consumers, and thus the plaintiff has alleged adequately a claim that the defendants' alleged refusal to follow their cancelation procedure is an unfair business practice.  See Fraley v. Facebook, Inc., No. 11 Civ. 01726, 2011 WL 6303898, at *22 (N.D. Cal. Dec. 16, 2011) (plaintiff adequately stated unfair business practice claim when no benefit outweighed alleged harm from defendants' alleged misappropriation).  The plaintiff also has stated adequately a claim under the alternative test, because she adequately alleged that the cancelation procedure violated established public policy as it is codified in the CLRA.  See Mlejnecky v. Olympus Imaging Am. Inc., No. 10 Civ. 02630, 2011

WL 1497096, at *7 (E.D. Cal. Apr. 19, 2011).  Thus the plaintiff has stated a claim that the defendants' alleged refusal to permit the plaintiff to cancel her membership is an unfair business practice under the UCL.

To plead adequately a fraudulent business practice, the plaintiff must allege that "'members of the public are likely to be deceived' by the alleged practices."  Smith, 2011 WL 6322200, at *3 (quoting Bardin v. DaimlerChrysler Corp., 39 Cal. Rptr. 3d 634, 647 (Cal. Ct. App. 2006)); see also Hotwire, 2008 WL 5874305, at *3.  For the reasons explained above, the plaintiff has failed to allege a fraudulent business practice with respect to the billing procedure, but she has alleged such a practice with respect to the allegedly deceptive cancelation procedure.

The FAL prohibits "any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement concerning the property or services "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code § 17500.  A plaintiff's claim under the FAL is subject to a "reasonable consumer" test, under which the plaintiff "must show that members of the public are likely to be deceived."  Williams v.

<u>Gerber Prods. Co.</u>, 552 F.3d 934, 938 (9th Cir. 2008) (internal quotation marks omitted); <u>Hotwire</u>, 2008 WL 5874305, at *3.  For the reasons discussed above, the plaintiff has not alleged adequately a violation of the FAL with respect to the billing procedure, because a reasonable consumer would not be deceived by the disclosed billing procedure.  However, the plaintiff's allegations that the defendants made false and misleading statements about the cancelation procedure and then allegedly prevented the plaintiff from canceling her membership would deceive a reasonable consumer.  The plaintiff has alleged adequately a violation of the FAL with respect to the defendants' alleged failure to permit the plaintiff to cancel her membership.

**B.**

The defendants move to dismiss the plaintiff's Fourth Claim for Relief, namely her conversion claim.  Under New York law, "[c]onversion occurs when a defendant exercises unauthorized dominion over personal property in interference with a plaintiff's legal title or superior right of possession." <u>LoPresti v. Terwilliger</u>, 126 F.3d 34, 41 (2d Cir. 1997) (internal quotation marks and citation omitted).  The plaintiff alleges that the defendants committed conversion by debiting her

debit card $29.95 three times without her permission.  However,
an action for conversion of money only exists when "there is a
specific, identifiable fund and an obligation to return or
otherwise treat in a particular manner the specific fund in
question."  Kirschner v. Bennett, 648 F. Supp. 2d 525, 540
(S.D.N.Y. 2009) (internal quotation marks and citation omitted).[6]

     To maintain a claim for conversion, the plaintiff must
allege the existence of a specific, identifiable fund of money
that is in the defendants' control and belongs to the plaintiff.
Here the plaintiff has not adequately alleged the existence of a
specific fund of money.  Instead, she generally alleges that the
"[d]efendants intentionally converted, interfered with and
exercised dominion and control" over her money.  (Second Am.
Compl. ¶ 77.)  The plaintiff does not allege that the defendants
had a specific fund of money that belonged to her.[7]  Because the

_____

[6] California law imposes a similar requirement that there be "a
specific, identifiable sum" involved for a plaintiff to maintain
an action for the conversion of money.  Ortega v. Toyota Motor
Sales, USA, Inc., 572 F. Supp. 2d 1218, 1220 (S.D. Cal. 2008);
see also Farmers Ins. Exch. v. Zerin, 61 Cal. Rptr. 2d 707, 709
(Cal. Ct. App. 1997) ("Money can be the subject of an action for
conversion if a specific sum capable of identification is
involved.").

[7] Although the fund in question is not the plaintiff's bank
account associated with her debit card, but rather the fund in
which the defendants allegedly kept the plaintiff's money, even
if the relevant fund were her bank account she would not have

plaintiff seeks the return of the money charged to her debit card, and does not "claim ownership of a 'specifically identifiable, segregated'" fund, she has failed to allege adequately a claim for conversion.  High View Fund, L.P. v. Hall, 27 F. Supp. 2d 420, 429 (S.D.N.Y. 1998) (quoting Mfrs. Hanover Trust Co. v. Chem. Bank, 559 N.Y.S.2d 704, 712 (App. Div. 1990)); see also Interior by Mussa, Ltd. v. Town of Huntington, 664 N.Y.S.2d 970, 972 (App. Div. 1997) (holding that the plaintiff failed to allege adequately a claim for conversion when "[the] complaint only [sought] the return of a sum paid to defendant").  Thus the plaintiff has failed to state a claim for conversion because she can point to no specific fund to which she has legal title or a superior right to possession.  The motion to dismiss the plaintiff's conversion claim thus is **granted.**

### IV.

The defendants also move to strike the plaintiff's class allegations under Rule 12(f) of the Federal Rules of Civil Procedure.  The defendants claim that the proposed class

---

alleged adequately a specific fund.  See Kirschner, 684 F. Supp. 2d at 540 (explaining that money cannot be specifically described "when a customer of a bank deposits funds into an account at the bank").

definition requires a merits determination and that the membership determinations would require numerous individualized inquiries.[8]

"Motions to strike are generally disfavored, and should be granted only when there is a strong reason for doing so." In re Tronox Sec. Litig., No. 09 Civ. 6220, 2010 WL 2835545, at *4 (S.D.N.Y. June 28, 2010). Moreover, "[a] motion to strike class allegations . . . is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of . . . litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." Chenensky v. N.Y. Life Ins. Co., No. 07 Civ. 11504, 2011 WL 1795305, at *1 (S.D.N.Y. Apr.

---

[8] The plaintiff seeks to represent the following classes: (1) all persons or entities who, in the last four years, purchased a membership to Roomster.com and continued to be charged fees after the expiration of the term of his/her/its membership; (2) all persons or entities who are or were residents of the State of California and, in the last four years, purchased a membership to Roomster.com and continued to be charged fees after the expiration of the term of his/her/its membership; (3) all persons or entities who, in the last four years, purchased a membership to Roomster.com and were not permitted to cancel the membership by Roomster; (4) all persons or entities who are or were residents of the State of California and, in the last four years, purchased a membership to Roomster.com and were not permitted to cancel the membership by Roomster.  (Second Am. Compl. ¶ 4.)

27, 2011) (quoting <u>Ironforge.com v. Paychex, Inc.</u>, 747 F. Supp. 2d 384, 404 (W.D.N.Y. 2010)).  Accordingly, district courts in this Circuit have frequently found that a determination of whether the Rule 23 requirements are met is more properly deferred to the class certification stage, when a more complete factual record can aid the Court in making this determination. <u>See, e.g.</u>, <u>Chenensky</u>, 2011 WL 1795305, at *4; <u>Ironforge</u>, 747 F. Supp. 2d at 404; <u>Cohen v. Gerson Lehrman Grp., Inc.</u>, 686 F. Supp. 2d 317, 324 (S.D.N.Y. 2010); <u>Ruggles v. Wellpoint, Inc.</u>, 253 F.R.D. 61, 67 (N.D.N.Y. 2008).

In this case, as well, the defendants' motion to strike the plaintiff's class allegations is premature and depends in part upon the outcome of discovery as to the plaintiff's allegations about cancelation and damages.  Moreover, the scope of this action has already been substantially narrowed because the plaintiff's claims relating to Roomster's billing procedures have been dismissed.  The motion to strike the class allegations should await a decision on class certification when the Court would have the benefit of a full factual record and can better assess the defendants' arguments. The defendants' motion to strike is therefore **denied without prejudice to renewal** after a period of preliminary discovery or in opposition to class certification.

31

**V.**

The individual defendants also move to dismiss the plaintiff's allegations of alter ego liability against them on the remaining claims.

Under New York law, a plaintiff may "pierce the corporate veil" by showing that: "(1) [the owner] ha[s] exercised such control that the [corporation] has become a mere instrumentality of the [owner], which is the real actor; (2) such control has been used to commit a fraud or other wrong; and (3) the fraud or wrong results in an unjust loss or injury to plaintiff." Freeman v. Complex Computing Co., Inc., 119 F.3d 1044, 1052 (2d Cir. 1997) (alterations in original and internal quotation marks omitted); see also EED Holdings v. Palmer Johnson Acquisition Corp., 387 F. Supp. 2d 265, 273 (S.D.N.Y. 2004); Network Enters., Inc. v. APBA Offshore Prods., Inc., No. 01 CV 11765, 2002 WL 31050846, at *3 (S.D.N.Y. Sept. 12, 2002).  New York law also allows piercing the corporate veil "when the corporation [h]as been so dominated by an individual . . . and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego."  Network Enters., 2002 WL 31050846, at *3 (internal quotation marks omitted).  Even when the veil-piercing

32

theory is based on domination, the control must be used "to perpetrate a fraud or other wrong." Freeman, 119 F.3d at 1053.

The plaintiff argues that the individual defendants, Zaks and Shriber, should be liable under alter ego liability because Roomster is their alter ego.  To support this argument, the plaintiff alleges that Roomster is inadequately capitalized and staffed, lacks a registered agent for service of process, lacks a physical address, and has an unusually high chargeback rate. (Second Am. Compl. ¶¶ 7-8.)  The plaintiff alleges that Roomster and the individual defendants have such a unity of interest that they are indistinguishable and that Roomster is a sham corporation used to run a fraud against the public.  While these indicia of alter ego liability may not ultimately suffice to establish alter ego liability, they are enough to justify limited discovery to determine whether the individual defendants are the alter egos of Roomster.  See JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc., 295 F. Supp. 2d 366, 379 (S.D.N.Y. 2003) (plaintiff's allegations regarding individual's alleged control over company sufficed to allow alter ego allegation to survive motion to dismiss); Maltz v. Union Carbide Chems. & Plastics Co., Inc., 992 F. Supp. 286, 303 (S.D.N.Y. 1998) (plaintiff's allegations regarding parent corporation's alleged control over subsidiary sufficed to allow

alter ego allegation to survive motion to dismiss).  Therefore
the motion to dismiss the allegations of alter ego liability is
**denied without prejudice.**


## CONCLUSION

The Court has considered all of the arguments of the
parties.  To the extent not specifically addressed above, they
are either moot or without merit.  For the reasons explained
above, the motion to dismiss for failure to state a claim is
**granted in part and denied in part.**

The claim for conversion is **dismissed.**  The remaining
claims are **dismissed** to the extent that the plaintiff's claims
rely on the alleged failure of the defendants to disclose
adequately the automatic renewal billing procedure.  To the
extent that the plaintiff's remaining claims rely on the
defendants' alleged refusal to allow the plaintiff to cancel her
membership, the motion to dismiss is **denied without prejudice.**
The motion to dismiss the individual defendants is also **denied
without prejudice.**

There will be a period of expedited discovery on the issues
of whether the plaintiff attempted to cancel her membership,
whether the defendants refused to allow the plaintiff to cancel
her membership, whether the plaintiff suffered damages, and

whether the individual defendants are the alter egos of

Roomster.  Expedited discovery is to be completed within sixty

(60) days.  The defendants' motion to strike the class

allegations is **denied without prejudice** to renewal after the

limited discovery period, or in opposition to any motion for

class action certification.

To the extent that any claims are dismissed, they are

dismissed with prejudice because the plaintiff has already had

an opportunity to amend her complaint.  Indeed, the Second

Amended Complaint was filed after an initial motion to dismiss

had been filed and the Court instructed that any dismissal would

be with prejudice.  See Abu Dhabi Commercial Bank v. Morgan

Stanley & Co., No. 08 Civ 7508, 2009 WL 3346674, at *2 & n.14

(S.D.N.Y. Oct. 15, 2009) (dismissal appropriate after plaintiff

has opportunity to amend and amended complaint fails to correct

deficiencies) (collecting cases).

The Clerk is directed to close Docket No. 38.

**SO ORDERED.**

Dated:     **New York, New York**
           **March 26, 2012**


                                          John G. Koeltl
                              United States District Judge


35